[Civ. No. 17496. First Dist., Div. Two. Oct. 17, 1957.]

C. E. SKIDMORE, Appellant, v. COUNTY OF SOLANO, Respondent.

*Assigned by Chairman of Judicial Council.

Hartwell H. Linney for Appellant.

Landels & Weigel, Landels, Weigel & Ripley and James M. Shumway for Respondent.

BRAZIL, J. pro tem.*—The parties to this action entered into the following contract in December 1927—"BE IT RE-SOLVED, that C. E. Skidmore be, and he is hereby authorized to check all deeds and sales to the State by the Tax Collector of Solano County, California, of all property on which taxes were first delinquent for the fiscal year 1920-1921, or are

*Assigned by Chairman of Judicial Council.

delinquent for prior years, which do not show redemption, cancellation or sale by the State, on deeds or certificates of sale; said party shall also submit report covering all such sales, together with recommendation as to further disposition of same and shall submit lists upon which requests . . . may be made . . . as provided for by Section 3897 of the Political Code . . .

"Said County of Solano will pay said C. E. Skidmore for such services an amount equal to fifty per cent (50%) of the County of Solano's portion of all moneys received by the said County of Solano from and after this date for redemption or sale of said property above referred to, payment thereof to be made at the regular monthly meetings of the Board for allowance of claims upon the statement of the County Auditor showing the amount paid in on redemptions and sales of property covered by this contract," etc.

Within two years or so the plaintiff completed his checking, made his report and recommendations as required. Nothing was left to be done on his part except to get paid out of moneys subsequently collected by defendant county. Plaintiff was required, because the county auditor was too busy, to travel to the county each year and, himself, prepare a statement of all moneys collected by the county on delinquent properties he had reported so that he could be paid one-half thereof.

The complaint is based upon a claim for $4,508.63, for moneys allegedly due under the contract, which was filed with the board of supervisors of defendant county on November 20, 1952. The plaintiff elected to treat the board's nonaction on the claim as a rejection. (Gov. Code, § 29714.) The complaint was filed within six months after expiration of the 90 day period. The answer alleges, and the court found to be true, that major portions of the claim upon which this action was brought, were duplications copied from a previous claim filed with the board. That claim had been filed November 21, 1951, was rejected by the board December 28, 1951, and notice of such rejection was given the claimant January 3, 1952. The court in a memorandum of decision declared the amount of such duplication to be $3,522.70 or, putting it the other way, $985.93 of the claim was not included in the first one which was formally rejected. The defendant set up the statute of limitations as a bar to recovery of all items which were included in the claim filed November 21, 1951.

"A claimant dissatisfied with the rejection of his claim or with the amount allowed him may sue the county on the claim at any time within six months after final action of the board." (Gov. Code, § 29715.)

"Actions on claims against a county, which have been rejected by the board of supervisors, must be commenced within six months after the first rejection thereof by such board." (Code Civ. Proc., § 342.)

In discussing these two limitation of action sections, which may appear inconsistent as to the time the six month period begins to run, the court in *Harvey* v. *County of Kern*, 107 Cal.App. 590 at 597 [290 P. 648] had this to say, "The use of the word 'first' in what is designated as the 'first rejection of a claim' is apparently designed to dispel any implication that claimants might extend their own time for filing in the courts actions against counties, by unauthorized re-presentations of what are in substance the same claims." It was there held that "final action" and "first rejection" referred to the same time; that partial allowance was not a first rejection of any part of the claim. It is apparent that as to that portion of the claim, which was included in a prior claim, there was both a final action and a first rejection by the board, and that it could not be revived as a separate claim in order to escape the bar of the six months limitation.

Appellant maintains that no part of his claim is barred because his claim is based upon a continuing contract for services, the last item of which is well within the six months period. While the contract may be a continuing one, it avails the appellant nothing for he chose to file a claim, as he had a right to do, in 1951 for moneys then due him under the contract even though he could have postponed doing so without losing any rights. Nor is there any merit in appellant's contention that the statute does not run against him because under the contract the board could and should have paid him without any claim being filed. It is not necessary to here decide whether the filing of a claim was a condition precedent to the filing of an action for moneys due on the contract because appellant filed his action on the rejected claim and not directly on the contract. The conduct of the parties ever since 1927 indicates they interpreted the contract to require the filing of claims for money as it became due under the contract. Claims were filed by appellant and allowed and paid by respondent county in many of the years preceding 1951; in fact, that is the only method the parties

ever used. The appellant followed the same procedure in other counties on substantially the same contract as is disclosed in *Skidmore* v. *County of Tuolumne,* 35 Cal.App.2d 525 [96 P.2d 178], *Skidmore* v. *County of Alameda,* 13 Cal. 2d 534 [90 P.2d 577], *Skidmore* v. *Dambacher,* 6 Cal.App.2d 83 [43 P.2d 1110], and *Skidmore* v. *West,* 186 Cal. 212 [199 P. 497].

█ █ Appellant maintains that the county is estopped to set up the defense of the statute of limitations because of its conduct immediately following the rejection of the claim in 1951. There are situations in which estoppel will lie against a county, but a discussion thereof is unnecessary for all the required elements of an estoppel are simply not present. There was evidence at the trial indicating a desire on the county's part to buy up Mr. Skidmore's contract for a lump sum and to that end letters were exchanged between him and the county counsel and auditor, all in the nature of negotiations on that subject. At no time did the county or its officers do or say anything which could be remotely construed as an intent to mislead the claimant with respect to his right to file suit on the rejected claim.

Four things must be present in order to invoke the doctrine of estoppel, viz: (1) the party to be estopped must know all the facts, (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended, (3) the latter must be ignorant of the facts and (4) he must rely on the former's conduct to his injury. (18 Cal.Jur.2d 406.) There is no evidence in the record which would support a finding that any of the last three elements existed. The appellant is unable to show or even argue the existence of an intent to mislead, as is indicated by the following quotation from his opening brief: ". . . it is our position that we have conclusively established that Appellant was lulled into a false sense of security by Respondent and its officers, *possibly with deliberation and intention.*" (Emphasis added.) Insofar as knowledge is concerned, it is safe to say that appellant's knowledge of the situation was as great, if not greater than that of the county officers with whom he dealt. Further elaboration on the presence or absence of the requisite elements of estoppel is unnecessary.

█ The affirmance or reversal of the judgment insofar as it applies to that portion of the claim which is not barred by the applicable limitation sections of the Civil Procedure

and Government Codes depends on whether or not appellant prevails in his plea of estoppel by judgment. A consideration of this problem requires a recitation of what went on before the instant case was tried.

A complaint substantially similar to the present one upon a rejected claim based upon the very same contract here involved was filed by this plaintiff against this defendant in July 1931. The case was tried about seven years later, findings were signed May 7, 1938, and judgment for plaintiff Skidmore as prayed for was entered June 7, 1938. The judgment roll of the first case was received in evidence, and as there was no transcript of testimony none was offered, nor was any extrinsic evidence produced to establish what was decided in the first case. The original judgment became final without an appeal having been taken. As in this case, there was attached to the complaint an exhibit which was itemized as to parcels of land, date of redemption, date of original delinquency, amount received by the county, and the compensation plaintiff claimed he earned as to each separate item. The findings and judgment therein established the validity of the entire exhibit.

Before the adoption of the Political Code in 1872, there was no statutory authority of any kind whereby tax delinquent property might be "sold to the state." All of the property for which appellant claims percentage of the amount of redemption or sale received by the county, and with which we are now concerned shows up on the exhibit attached to the complaint to have been first delinquent before 1872. As to them there was not and could not have been any deed or sale to the state. Respondent contends that under the contract appellant was employed to check only "all deeds and sales to the State" of properties on which taxes were delinquent, and so property which showed no such sales, but merely delinquencies in payment of taxes before 1872, was not within the purview of the contract. It is the appellant's position that he need not show any deed or sale to the state, but only that taxes for some year prior to 1920-1921 do not appear to have been paid. The trial court accepted respondent's interpretation of what was covered by the contract with the observation that, because it was impossible to tell what evidence was produced in the former trial upon the subject, the appellant could not prevail in his plea of res judicata. The answer to the complaint in the first action included many affirmative defenses but the one engaging our attention here was not presented as an affirmative defense, nor does it appear that such inter-

pretation was at all called to the attention of the trial judge in that first case. The witness Jones who was one of the attorneys for the county in the original trial as well as the instant one was asked: "Mr. Jones, is it not a fact you as a lawyer and County Counsel—that the defense made in this case based upon the words 'Sales and deeds to the State' could have been made in the previous case?" to which he replied, "Well, I presume that is a fact, yes, if we had thought of it."

"That only is deemed to have been adjudged in a former judgment which appears upon its face to have been so adjudged, or which was actually and necessarily included or necessary thereto." (Code Civ. Proc., § 1911.)

"Next is the question, under what circumstances is a matter to be deemed decided by the prior judgment? Obviously, if it is actually raised by proper pleadings and treated as an issue in the cause, it is conclusively determined by the first judgment. But the rule goes further. If the matter was within the scope of the action, related to the subject-matter and relevant to the issues, so that it *could* have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged. The reason for this is manifest. A party cannot by negligence or design withhold issues and litigate them in consecutive actions. Hence the rule is that the prior judgment is *res judicata* on matters which were raised or could have been raised, on matters litigated or litigable." (*Sutphin* v. *Speik,* 15 Cal.2d 195 at 202 [99 P.2d 652, 101 P.2d 497].)

The judgment in the first case gave plaintiff all he asked for. Attached to that complaint and made a part thereof, as shown by the judgment roll received in evidence in this case, is an exhibit which discloses many items of claimed compensation (in fact more than half) where the prior delinquency appears to have occurred before 1872. As to those items, the issue between the parties was exactly the same there as it is now with respect to the items appearing in the second claim which were not barred. Inasmuch as the two complaints involve the same contract and with respect to much of it, the exact same issues, and the same parties, the defense successfully interposed in the trial court in the second case was just as available to the defendant in the first case. It may not be relitigated by the simple explanation that the particular defense was overlooked when the first case went to trial.

Respondent calls attention to section 2195 of the Revenue and Taxation Code under the heading "Redemptions listed in appellant's complaint were not of property as to which there existed delinquent taxes for 1920-21 or for any prior year." That section reads, "After 30 years succeeding the time, heretofore or hereafter, when any tax becomes a lien, if the lien has not been otherwise removed, the lien ceases to exist and the tax is conclusively presumed to be paid. The official having charge of the records of the tax shall mark it 'Conclusively presumed paid.' " In a situation almost the same as we have here, the point was determined adversely to respondent's contention in the following language: (transpose respondent to appellant), "The respondent undertook in his contracts to investigate and report to appellant on all delinquencies first occurring in the fiscal year 1923-24 and years prior thereto. He was to be paid on the basis of redemptions or sales made upon delinquencies so found. Hence, if there were no redemptions, there was no pay. Running through appellant's argument is the suggestion that, since section 3716 of the Political Code cancelled every tax lien more than 30 years old, those delinquencies noted in the demand as having first occurred more than 30 years prior to the fiscal year of 1923-24 must be deemed void, and hence respondent should not recover upon them. The argument is not impressive because the effective date of the code amendment was after the work was performed by respondent, and the only evidence brought to our attention discloses that redemptions were nevertheless made, and it is upon that basis that appellant owes respondent fifty per cent of what was paid to the county." (*Skidmore* v. *County of Tuolumne, supra,* 35 Cal.App.2d 525, 529-530.)

In his opening brief, the appellant apparently concedes that $985.93 is a correct calculation of the portion of the second claim which was not included in the first one, but in his closing brief he says that the difference is $1,727.80; that "In its Memorandum Decision the trial court refers to this difference as $985.93 which appears obviously incorrect." A careful check of the exhibit attached to the complaint with the findings of fact on the subject establishes $985.93 as the correct figure.

There appears to be no serious dispute in the record on whether or not the moneys for sales and redemptions as listed in the claim were actually received by the county. The subject was but lightly touched upon at the trial for it appears not to have been one of the real issues between the parties. The

only testimony on the subject is that of the county auditor, who testified that the amounts so reported by the appellant were received by the county and paid into the general fund.

Judgment is reversed with directions to amend the findings to conform with this opinion and to then enter judgment in favor of plaintiff and against defendant for the sum of $985.93 with interest from November 20, 1952.

Dooling, Acting P. J., and Draper, J., concurred.

A petition for a rehearing was denied November 15, 1957.