**William Woods PLANKINTON, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

**No. 56–C–261.**

United States District Court
E. D. Wisconsin.

Aug. 19, 1958.

Brooke Tibbs, Milwaukee, Wis., for plaintiff.

Charles K. Rice, Asst. Atty. Gen., James P. Garland, M. Carr Ferguson, Attys., Dept. of Justice, Washington, D. C., Edward G. Minor, U. S. Atty., Francis L. McElligott, Asst. U. S. Atty., Dept. of Justice, Milwaukee, Wis., for defendant.

GRUBB, District Judge.

Taxpayer brings this action to recover certain sums of money which constitute portions of overpayments of internal revenue taxes for the years 1949 and 1950. Repayment is resisted on the ground that it is barred by statutory limitations.

In accordance with the Current Tax Payment Act of 1943, (I.R.C.1939, as amended, 26 U.S.C.A. § 59(d)), taxpayer filed quarterly declarations of estimated individual income tax. He remitted therewith payments of estimated tax for the year 1949 in March, June and September of 1949 and in January 1950. Pursuant to a duly granted extension, he filed a final return and made final payment of tax for this year in June, 1950. With respect to overpayments of tax for the year 1949, taxpayer filed a claim for refund in May 1953.

For the year 1950, taxpayer filed quarterly declarations of estimated tax and remitted payment thereof in March, June and September of 1950, and in January, 1951. He filed a final return and made final payment of tax in September, 1951, pursuant to extension granted. Claim for refund of overpayments of tax for the year 1950 was filed in July 1954.

The amounts of overpayments of tax are not disputed.

The Government limited the amounts refundable to payments accompanying the final returns on the ground that, with respect to both years in question, all other payments had been remitted more than three years from the time of filing claims for refund, and that, therefore, repayment of any portion thereof was barred by the application of Section 322(b) (2) (A) (I.R.C.1939). The amounts of overpayment thus withheld as barred from refund are $3,447.73 for

the year 1949, and $18,041.56 for the year 1950.

The subsection, imposing a limitation on amounts recoverable as refunds, invoked here, reads as follows:

"§ 322. Refunds and credits [1]

\* \* \* \* \* \*

"(b) Limitation on allowance

\* \* \* \* \* \*

"(2) Limit on amount of credit or refund. The amount of the credit or refund shall not exceed the portion of the tax paid—

"(A) If a return was filed by the taxpayer, and the claim was filed within three years from the time the return was filed, during the three years immediately preceding the filing of the claim."

The issue presented here is whether payments of estimated tax remitted more than three years from the time of filing a claim for refund and prior to filing a final return pursuant to duly granted extension are "payment of tax" within the meaning of this subsection and therefore barred from refund as overpayment of tax.

■ For the purpose of the refund and credit provisions of the Internal Revenue Code, Section 322, the concept "time of payment of tax" serves three functions, (1) it commences the running of the period of limitations on filing claims for refunds in instances where the taxpayer did not file a final return for the taxable year; (2) it serves as a limitation on amounts of overpayment refundable, as is contended here; and (3) it determines the time when an overpayment of tax occurs.

A number of decisions have defined when a remittance of money constitutes payment of tax for all purposes of the refund and credit section. The leading case is Rosenman v. United States, 1945, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535. Time of payment was material under the applicable statute to a determination of the timeliness of the claim for refund

and to ascertaining the amounts refundable. Remittances in this case were estimated payments on account of the federal estate tax, paid under protest, prior to filing a final return and assessment of the tax. They were placed in a suspense account, when received, by the Collector of Internal Revenue. The Court held that such amounts paid on account of the tax do not constitute "payment of tax", for the purposes of the statute, prior to the time the amounts are credited to the particular tax involved in discharge of the defined liability for such tax. The theory underlying this rule rests on the fact that there must be an overpayment of tax to give rise to a claim for refund. Neither the fact nor the amount of overpayment is ascertainable prior to payment in discharge of a defined liability, that is, prior to filing a final return and assessment of the tax. As stated in the opinion, 323 U.S. on page 661, 65 S.Ct. on page 538, "The crux of the matter is the alleged illegal assessment or collection, and 'payment of such tax' plainly presupposes challenged action by the taxing officials."

It may be noted here that the Court states that it is not deciding this question with regard to the Current Tax Payment Act of 1943.

The Rosenman rule has been followed in a number of cases involving issues similar to that of the case at bar. In Budd Co. v. United States, 3 Cir., 1957, 252 F.2d 456, the remittances were tentative payments on account of the income tax in advance of filing a final return, without protest by the taxpayer, and placed in a suspense account on receipt. The statute invoked was the same as that of the case at bar. In Atlantic Mutual Insurance Co. v. McMahon, D.C.S.D.N.Y. 1957, 153 F.Supp. 48, this same statute was in question. Payment there was 30% of the estimated tax required as a condition to the granting of an extension for filing a final return and payment of tax.

1. Unless otherwise noted, all references to Section 322 are to I.R.C., as amended, 26 U.S.C.A. § 322, applicable to the years in question here.

The timeliness of filing of the refund claim was in issue in United States v. Dubuque Packing Co., 8 Cir., 1956, 233 F.2d 453, and in Thomas v. Mercantile Nat. Bank at Dallas, 5 Cir., 1953, 204 F. 2d 943. In the Dubuque case, the taxpayer made voluntary payment on account of an asserted deficiency, while in the Mercantile National Bank case, the amounts in question were paid to forestall the imposition of penalties and were credited directly to the account of the taxpayer.

The features these cases have in common with each other and with Rosenman are advance payments on account of a tax, prior to filing a final return defining the obligation for the particular tax, or prior to assessment of the tax by the proper authorities.

Whether these decisions are controlling with regard to the issue in the instant case rests on a determination whether the nature of the advance payments made by the taxpayer here, under the Current Tax Payment Act, is sufficiently analogous to that of payments in cited cases which were held not to constitute payment of tax at the time of remittance.

In accordance with the Current Tax Payment Act, the taxpayer filed quarterly declarations of estimated tax and remitted therewith payment of such estimated tax. On receipt by the Department of Internal Revenue, such remittances are credited to an estimated tax account of the taxpayer rather than against the tax for the taxable year since the latter is not outstanding at this time. After a final return for the taxable year has been filed, and after assessment of the tax by the proper authorities, amounts to the taxpayer's credit in the estimated tax account are credited against the liability for the tax for the taxable year which is outstanding after assessment thereof. The obligation of the taxpayer for the particular tax for the taxable year remains tentative until the filing of the final return. Indeed, it cannot be determined until the closing of the taxable year in most cases. After the assessment of the tax, deficiencies may be asserted, overpayment may be determined, and refund procedure instituted.

█ Liability with regard to quarterly estimated tax payments arises from the duty, imposed by the statute to file declarations and pay portions of the estimated tax at the times set forth. This liability may be enforced by the Department of Internal Revenue. However, it differs from the liability for the tax for the taxable year in that the latter arises from the assessment of the tax by the proper authorities. There is no defined obligation for payment of the tax under the Current Tax Payment Act until a final return is filed. This is conceded by the Government.

The Government attempts to distinguish Rosenman and cases cited above on the ground that there, payments were made under protest; that moneys were placed in suspense accounts; or, that there was such lack of understanding at the time of payment that the approximated tax liability was too arbitrary to constitute a defined obligation.

Contested payment, or protest by the taxpayer at the time of remittance does not appear to be an absolute condition to these holdings. This element was lacking in Budd Co. v. United States, supra. In Atlantic Mutual Insurance Co. v. McMahon, supra, it is said, with respect to a similar contention, that the absence of protest did not render Rosenman inapplicable.

Placing of moneys received in a suspense account is an accounting procedure, similar to that of placing them in estimated tax accounts. It is a method for segregating funds received at a time when no assessments for the ultimate tax are determinable. In Thomas v. Mercantile Bank at Dallas, supra, payment of an asserted deficiency, although credited directly to the account of the taxpayer, nevertheless was not considered payment of tax.

The fact that the remittances in the instant case were not arbitrary estimates

of the taxpayer's final obligation for the particular tax renders this obligation no less uncertain at the time of remittance. As has been said above, in most cases the obligation can be defined no sooner than the close of the taxable year because of the nature of the income of taxpayers subject to the Current Tax Payment Act.

An interpretation of when a payment of money constitutes payment of tax similar to that of the Rosenman case was rendered in Lewyt Corp. v. Commissioner, 2 Cir., 1945, 215 F.2d 518, modified on other grounds 349 U.S. 237, 75 S.Ct. 736, 99 L.Ed. 1029, however, for purposes other than the refund and credit provisions of the Code. The Court cites a number of statutes under which Rosenman may be inapplicable. These sections either provide directly that payment is in satisfaction of tax liability, or this conclusion follows by necessary implication from the language. The list of statutes, dealing primarily with deficiency procedure, does not include the Current Tax Payment Act.

Cases in which remittances prior to filing a final return have been held to constitute payments of tax may be distinguished. In McConkey v. Commissioner of Internal Revenue, 4 Cir., 1952, 199 F.2d 892, a review was sought of an asserted deficiency which the taxpayer had paid prior to assessment. In denying review, the Court held that the payment had extinguished the deficiency. The Rosenman decision is distinguished in the opinion as dealing with refunds of overpayment of tax, and as, therefore, not applicable to a determination whether or not a deficiency existed. In a dictum, in Southern Sportswear Co., Inc. v. Commissioner of Internal Revenue, 1948, 10 T.C. 402, a payment in conjunction with a tentative return was considered tax paid for the purpose of the period of limitation with respect to the timeliness of the claim for refund. The Rosenman case apparently was not considered.

■ From a comparison of Rosenman and cases applying the rule thereof, with the case at bar, it appears that the essential features of the former cases are present in the latter. These are the following: Remittances of moneys on account of the tax for the taxable year, in amounts which are based on estimates of the taxpayer's obligation for the tax for the taxable year, at a time when this obligation was not defined, and when the liability for the defined obligation was not fixed by assessment of the particular tax. Thus, the facts of the case at bar appear to be sufficiently analogous to those of Rosenman and of cases following Rosenman, to make this rule applicable thereto. Definition of the obligation by filing a final return and creation of liability thus defined by assessment in the case at bar occurred at a time within the three years immediately preceding the filing of the claim for refund. Payment of tax, as distinguished from a remittance on account of the tax, similarly occurred within such period. The repayment of the sums sought to be recovered here is not barred by the operation of the statute invoked here, standing by itself.

■ However, it is further contended that subsections (b) (4) and (e) of Section 322 establish a presumptive date on which remittances of estimated tax may conclusively be deemed payments of tax for the purposes of subsection (b) (2) (A) of this Section.

Section 322(b) provides as follows:

"(4) Return considered filed on due date. For the purposes of this subsection, a return filed before the last day prescribed by law for the filing thereof shall be considered as filed on such last day. For the purposes of paragraphs (2) and (3) of this subsection, and for the purposes of subsection (d) of this section, an advance payment of any portion of the tax made at the time such return was filed shall be considered as made on the last day prescribed by law for the payment of the tax or, if the taxpayer elected to pay the tax in installments, on the last day prescrib-

ed for the payment of the first installment. For the purposes of this paragraph, the last day prescribed by law for filing the return or paying the tax shall be determined without regard to any extension of time granted the taxpayer."

The "last day prescribed by law" for filing of the return and for payment of tax, "determined without regard to any extension of time granted the taxpayer" of which the subsection speaks falls on March 15 of 1950 and 1951. The returns which are the concern of this subsection are apparently final returns for the taxable year. It is not contended that the subsection is applicable to quarterly declarations of estimated tax, the filing of which is required by the Current Tax Payment Act. The "advance payments" which are the concern of the statute are advance payments "made at the time such return was filed". Substituting March 15, for the "last day prescribed by law" as required by the last sentence of the subsection, reveals that the statute deals with returns filed prior to March 15, and with advance payments of tax accompanying such returns. These payments are not estimated payments as are required under the Current Tax Payment Act, but are final payments which may be considered advance only in the sense that they are made prior to the statutory due date for the payment thereof.

The taxpayer in the instant case did not file a final return prior to March 15 of either year. The payments accompanying his final returns have been refunded to him as overpayments. It would appear, therefore, that this statute has no application to the facts of the case at bar.

■ This interpretation is consistent with the legislative intent as to its enactment, which was to give taxpayers, who filed and paid earlier than on the statutory due date, the benefit of a limitations period commenced by the statutory due date rather than the actual date of filing or payment which occurred prior thereto. This intent has been acknowledged by the Court in the Atlantic Mutual Insurance Co. case where, 153 F. Supp. on page 50, fn. 3, it is said that, "This provision was primarily intended to remove any incentive to pay just prior to a deadline; accordingly, early payment is deemed made at the due date. See H.R.Rep. No. 2333, 77th Cong., 2d Sess. 119 (1942); S.Rep. No. 1631, 77th Cong., 2d Sess. 156 (1942)."

No case has been cited supporting the contention of the Government with respect to the applicability of this subsection to the case at bar. The question appears not to have been raised in the Atlantic Mutual Insurance Co. case, nor in the Budd Co. case, where, under the theory of the Government this subsection would have been controlling. In Allen v. South Atlantic S. S. Co. of Delaware, 5 Cir., 1949, 177 F.2d 257, this subsection was held to give the taxpayer the benefit of a presumptive date later than that of actual payment and assessment of the tax, thereby permitting a refund of overpayment which the Government had contended was barred.

Further support for the conclusion that Section 322(b) (4) does not establish a presumptive date of payment of tax by payments of estimated tax under the Current Tax Payment Act is furnished by Section 322(e), which was amended at the time of adoption of the Current Tax Payment Act to accommodate the concept of estimated tax within its provisions. Uniformity of administration, the aim of the drafters of this action,[2] does not necessitate the enactment of a statute the subject-matter of which is already within the purview of an existing provision of the Code. As amended, the relevant portion thereof provides:

"(e) Presumption as to date of payment. * * * For the purposes of this section, any amount paid as

2. See House Committee on Ways and Means, H.Rep. No. 2333, 77th Cong., 2d Sess., p. 134 (1942–2 Cum.Bull. 372, 471).

estimated tax for any taxable year shall be deemed to have been paid not earlier than the fifteenth day of the third month following the close of such taxable year."

The "fifteenth day of the third month following the close of such taxable year" falls on March 15 for the years in question. This date is not within the three years immediately preceding the filing of the claim for refund, and remittances deemed payment of tax on such date are barred from refund.

It is the contention of the Government that this section conclusively establishes a date on which payment of tax for the purposes of Section 322(b) (2) (A) shall be deemed to have occurred. This does not appear to be the clear import of the language which reads that taxes shall be deemed to have been paid "not earlier than" the fifteenth day of the third month following the close of the taxable year. Thus, the statute does not define when payment of tax shall be deemed to have taken place. For taxpayers who file final returns prior to or on the statutory due date, this section, in effect, codifies the Rosenman rule. Quarterly payments of estimated tax remitted prior to the filing of a final return are thereby safeguarded from the limitation on amounts recoverable as refunds, imposed by Section 322(b) (2) (A).

Nor does the language require a conclusion that payments of estimated tax by a taxpayer who files a return after the statutory due date therefor, as in the instant case, shall be deemed payment of tax on a date prior to filing the return and assessment of tax, as is argued by the Government. No judicial construction of this statute has been cited. The legislative history and congressional comment reveal no intent with regard to this question. The version thereof, prior to amendment, dealing with withholding tax payments only, employed the word "on" in place of the phrase "not earlier than", thus calling for a construction that the statute established a date certain. As amended, the section now uses "not earlier than" with regard to estimated tax and to withholding tax as well. Under accepted rules of construction, it may be inferred that the amendment effects a change in the law respecting payments of withholding tax. Brewster v. Gage, 1930, 280 U.S. 327, 50 S.Ct. 115, 74 L.Ed. 457. It may also be inferred that Congress, by the deliberate use of the phrase "not earlier than" with regard to estimated tax payments intended a similar effect for this provision.

The interpretation of Section 322(e) contended for by the Government would, in effect, impose a penalty upon taxpayers filing a return pursuant to a duly granted extension, in that, for them, the period of limitation on amounts recoverable as refunds is shorter in time than for taxpayers who file prior to, or on the statutory due date. In the instant case, the taxpayer would have had to file claim for refund within thirty-three months of filing his 1949 return which defined his obligation for the taxable year and at which time the fact and amount of overpayment was ascertainable, and within thirty months of filing his return for 1950. It is well settled that tax statutes are to be construed liberally in favor of the taxpayer. Burnet v. Niagara Falls Brewing Co., 1931, 282 U.S. 648, 654, 51 S.Ct. 262, 75 L.Ed. 594. Where, as here, the overpayments of tax for both years are undisputed and the interpretation proposed by the Government results in the imposition of a penalty on the taxpayer, the statute will not be given such effect unless the clear mandate of its language necessitates such a conclusion.

The Government has also cited Section 3770(c) (I.R.C.1939) [3] to support its contention that remittances here constituted payments of tax, thus modify-

---

3. This section reads:
   "An amount paid as tax shall not be considered not to constitute an overpayment solely by reason of the fact that there was no tax liability in respect of which such amount was paid."

ing the effect of the Rosenman rule. Similar contentions in Thomas v. Mercantile National Bank at Dallas, supra, United States v. Dubuque Packing Company, supra, and Budd Co. v. United States, supra have been rejected. The decisions of these cases with regard to the applicability of this Section are controlling here.

The Court adopts the stipulations of fact as its findings of fact. The conclusions of law are as set forth above. Taxpayer may recover overpayments of tax, withheld by the Government, in the principal amount of $3,447.73 and $18,-041.56, together with such interest as the law provides, subject to set-off in the sum of $305.14 due the defendant by reason of error in Internal Revenue Department computation.

Counsel for taxpayer is directed to prepare an order for judgment and judgment in accordance with this opinion, submitting them to the defendant for approval as to form and the arithmetical computation of the interest only.