[Civ. No. 20324. First Dist., Div. Two. Oct. 1, 1962.]

EVELYN McDOUGALL et al., Plaintiffs and Appellants, v. COUNTY OF MARIN, Defendant and Respondent.

A. Leonard Bjorklund, Jr., for Plaintiffs and Appellants.

E. Warren McGuire, County Counsel, for Defendant and Respondent.

Stanley Mosk, Attorney General, Dan Kaufmann, Assistant Attorney General, and Edward P. Hollingshead, Deputy Attorney General, as Amici Curiae on behalf of Defendant and Respondent.

KAUFMAN, P. J.—This is an appeal from a judgment of dismissal entered after the trial court sustained the respondent's general demurrer to the appellants' third amended complaint without leave to amend. On this appeal, appellants

argue that the trial court erred in its actions because: (1) their claims for refund of illegal property taxes erroneously collected were timely filed within the three-year period allowed by section 5097, subparagraph (b), of the Revenue and Taxation Code, and in the alternative, their complaint sets forth facts legally adequate to excuse and justify the late filings; (2) their claims were in the proper form prescribed by section 5097, subparagraph (a), of the Revenue and Taxation Code, and in the alternative, that the respondent is estopped from contending that the claims were not in proper form; (3) their complaint states facts sufficient to constitute a cause of action for the refund of taxes collected during all three of the fiscal years, as alleged. There is no merit to any of these contentions and as we have concluded that the appellants' claims were not timely filed, it will not be necessary for us to discuss all of the remaining arguments in detail.

A summary of the origin of the controversy is necessary for a complete understanding of the issues presented. On August 15, 1955, the State Board of Equalization issued its order directing the respondent county to increase by 26 per cent the assessed value of all taxable property contained in the local assessment roll for the fiscal year 1955-1956. The purpose of this order was to equalize the assessment throughout the state, pursuant to section 9, article XIII of the state Constitution. On receipt of this order, the respondent county increased only the assessed value of property contained in the local secured roll and left the unsecured roll untouched. The taxes with the 26 per cent increase were subsequently levied and collected from the appellants.

Thereafter, on June 30, 1959, appellants and 319 other persons filed claims with the respondent county's board of supervisors for the refund of illegal property taxes erroneously collected pursuant to sections 5096 and 5097 of the Revenue and Taxation Code, for the 1955-1956, 1956-1957, 1957-1958 fiscal years. Appellants claimed that the State Board of Equalization had no legal authority to issue the order of August 15, 1955 as: 1) the Legislature had suspended the board's power to undertake intercounty equalization; 2) at the time of the order, the county board had adjourned for the year so that appellants were deprived of the right provided by law to protest the order and seek redress; 3) the respondent's board of supervisors erred in applying the increase only to the secured roll and not to the unsecured roll; and. 4) the 26 per cent increase ordered by the state board was based on an

erroneous and insufficient sampling of property values within the county.

On September 1, 1959, the respondent's board of supervisors rejected all of the above claims. Thereafter, on November 6, 1959, appellants commenced their action for the refund of the taxes, alleging the grounds set forth above. Respondent answered and demurred, generally and specifically. The trial court sustained respondent's demurrer, in part, and concluded that no cause of action had been stated for the 1956-1957 and 1957-1958 fiscal years. Thereafter, following further amended complaints and demurrers, the trial court on August 10, 1961, sustained the respondent's demurrer to the appellants' third amended complaint, without leave to amend. The demurrer was apparently sustained on the theory that appellants' claims for refund had not been timely filed under the provisions of section 5097, subparagraph (b), of the Revenue and Taxation Code. The judgment of dismissal which is the subject of this appeal was entered on the demurrer to the third amended complaint.

Section 5097 of the Revenue and Taxation Code, so far as relevant, provides: "No order for a refund under this article shall be made except on a claim: . . . (b) Filed within three years after making of the payment sought to be refunded."

The first question presented is whether appellants' claims for refund filed on June 30, 1959, were filed within three years after "making of the payment sought to be refunded." The question appears to be one of first impression as the issue in this precise form has not heretofore been raised. Appellants contend that the only reasonable interpretation of the above quoted language of the statute is that the claim for a refund can be filed within three years after the end of the fiscal year in question. The code provides that one-half of the real property taxes on the secured roll and all the personal property taxes are due on November 1 (Rev. & Tax. Code, § 2605), and if unpaid are delinquent on December 10 (Rev. & Tax. Code, § 2617); the second half of the real property taxes are due on February 1 (Rev. & Tax. Code, § 2606) and if unpaid are delinquent on April 10 (Rev. & Tax. Code, § 2618). As pointed out in *Fellowship of Humanity* v. *County of Alameda*, 153 Cal.App.2d 673 [315 P.2d 394] at p. 701, the claim procedure is silent as to when the payment must be made but merely provides that the claim for a refund must be filed "within three years after making of the payment sought to be refunded."

Appellants' complaint in the instant case alleges payment of the taxes due on or before the due date, and has not indicated whether the taxes were paid in one installment or two installments. Therefore, it must be assumed that the taxes in question were paid sometime between November 1 and December 10 or February 1 and April 10. Appellants contend that to give literal interpretation to subparagraph (b) of section 5097 by making the three-year period of limitation for the purposes of filing for a refund run from the date of making of the payment, would create a different period for each installment of the tax, if the tax is paid in installments; that this interpretation would contradict section 2615 of the Revenue and Taxation Code, which provides that the receipt given to the taxpayer on the payment of the property taxes indicates only the beginning and ending of the fiscal year and not the date on which the tax is paid. However, section 2609 provides that the notice to pay taxes shall specify the dates when the taxes on the secured roll will be due and the time when delinquent. Appellants urge a fair and reasonable construction of the statute and one with a uniform date easily ascertainable by the taxpayer.

We have not been able to find any authority in this state on the relation of the claim date to the installment payment procedure. However, *United States* v. *Clarke*, 69 F.2d 748, appears to us to be in point and to indicate a fair way of interpreting the statute in accordance with its expressed legislative intent. In that case, the taxpayer sought a refund of a tax paid in three installments; the relevant statute [then § 319(b) of the Revenue Act of 1926, 26 U.S.C. § 1120(b)] provided: "All claims for the refunding of the tax imposed by this chapter, alleged to have been erroneously or illegally assessed or collected, must be presented to the Commissioner within three years next after the payment of such tax." The lower court held that the three year statute of limitations did not begin to run until the time of the payment of the last installment, and that this was the controlling date of the purpose of the statute of limitations on filing for the refund. The Third Circuit Court of Appeals affirmed this view, which has been followed since by the federal courts in interpreting similar statutory provisions. (See cases collected in 94 A.L.R. 978 et seq.; cf. *Plankinton* v. *United States* (D.C. Wis. 1958) 164 F.Supp. 912.)

In this case, we must assume that the final installment paid by the appellants was paid on or before April 10, 1956, and

their claims filed on June 30, 1959, more than three years after "the making of the payment sought to be refunded." Thus, we can only conclude that the appellants failed to comply with the claims statute and are unable to assert a valid cause of action against the respondent county unless the respondent is estopped from asserting the provisions of the statute.

We have found no basis for an estoppel in the matter set forth by the appellants in their second and third amended complaints. Appellants attempt to argue that the respondent's officers negligently advised the general public that the action of the State Board of Equalization was valid and that these assertions were given wide publicity in the local newspaper. Appellants contend that the existence of an estoppel is a question of fact. However, estoppel is a question of fact unless only one inference can be drawn from the evidence or pleadings, such as in the instant case, where the respondent county in effect admitted the facts pleaded for the purposes of the demurrer (*Sawyer* v. *City of San Diego*, 138 Cal.App.2d 652 [292 P.2d 233].) We think the trial court properly concluded that these facts do not, as a matter of law, constitute an estoppel (*Skidmore* v. *County of Solano*, 154 Cal.App.2d 449 [316 P.2d 646] ; *California Cigarette Concessions, Inc.* v. *City of Los Angeles*, 53 Cal.2d 865 [3 Cal.Rptr. 675, 350 P.2d 715]).

Having concluded that the trial court properly sustained the demurrer without leave to amend on the basis of the three year statute of limitations discussed above, we will briefly address ourselves to the merits of the controversy, i.e., the validity of the state board's intercounty equalization order. Appellants contend that the state board was without power to issue this order as its power to effect intercounty equalization was changed by the suspension of its powers. However, appellants' argument overlooks the fact that the State Board of Equalization's duty to equalize the level of assessments in the various counties throughout the state is derived from section 9, article XIII of the state Constitution, independent of any legislative enactment (*Baldwin* v. *Ellis*, 68 Cal. 495 [9 P. 652]). In 1949 (Stats. 1949, ch. 1466), the Legislature enacted certain provisions which outlined in detail some of the procedures to be followed by the state board in executing these powers; however, before these new procedures could be implemented, an emergency measure was adopted postponing their operation until 1953 (Stats. 1951, ch. 1554) and after several subsequent postponements, the 1949 enact-

ment was repealed in 1959 (Stats. 1959, ch. 1682). A constitutional provision will be presumed to be self-executing and will be given effect without legislation unless it clearly appears that this was not intended (*Rose* v. *State of California,* 19 Cal.2d 713 [123 P.2d 505] ; *Chesney* v. *Byram,* 15 Cal.2d 460 [101 P.2d 1106] ; *Winchester* v. *Howard,* 136 Cal. 432 [64 P. 692, 69 P. 77, 89 Am.St.Rep. 153]).

 Appellants also argue that the order of the state board was invalid because it was applied only to the secured roll. However, property on the unsecured roll consists almost exclusively of personal property and does not constitute a lien against any real property. Apparently, because of this lack of security, taxes on the unsecured roll have always been due and payable either on the lien date, the first Monday in March (Rev. & Tax. Code, § 2901) or immediately upon assessment by the assessor. The equalization of the local secured roll by the board of supervisors is not completed until the third Monday in July (Rev. & Tax. Code, § 1603), and no action can be taken by the Board of Equalization until after that day. The State Board of Equalization sits on the third Monday in July to and including the third Monday in August, during which time it is required to equalize the valuation of the taxable property in several counties of the state.[1] Thus, it would appear that the taxes on the unsecured roll must be and are collected long before the State Board of Equalization can act on intercounty equalization matters. Furthermore, section 9a, article XIII of the state constitution provides that the taxes on the unsecured roll are to be based on the previous year's tax rate (*Abrams* v. *City & County of San Francisco,* 48 Cal.App.2d 1 [119 P.2d 197]). It would thus appear that contrary to appellants' argument, the August 15 order of the state board could not constitutionally be applied retroactively to the unsecured roll.

In their argument on this point, appellants rely heavily on *People* v. *County of Tulare,* 45 Cal.2d 317 [289 P.2d 11], and *County of Tulare* v. *State Board of Equalization, Tulare County Superior Court No. 47678.* Tulare County, in 1955,

[1] Any county seeking a review of the actions of the state board must make a written application for a hearing before the third Monday in July or within two weeks after the completion of the local roll, whichever is later (Rev. & Tax. Code, § 1821). The action of the state board becomes final on September 10 if no hearing is requested and no later than September 25 if a hearing is requested (Rev. & Tax. Code, § 1823). These procedures, enacted by chapter 682, Statutes 1959, became effective on September 18, 1959.

instead of complying with the order of the State Board of Equalization, instituted an action in its local superior court to invalidate the order and succeeded at the trial level, on the ground that the order was not made applicable to the unsecured roll (*County of Tulare* v. *State Board of Equalization, No. 47678*). The matter, however, did not reach the appellate courts and appellants here have not provided us with any reasons for following that case. While the *Tulare County* action was still pending in the superior court, the state instituted an independent and original proceeding in the Supreme Court for a writ of mandate directing Tulare County and its officers to increase the assessment roll as directed by the State Board of Equalization. The Supreme Court, however, refused to issue the writ on the ground that the action involved the same issues between the same parties as was then pending in the superior court (*People* v. *County of Tulare, supra.*) Furthermore, in 1959, chapter 2, division 1, part 3 of the Revenue and Taxation Code was revised and renumbered (Stats. 1959, ch. 1682), and it was made clear that intercounty equalization applied only to the secured roll (Rev. & Tax. Code, § 1821).

In view of the foregoing, it is not necessary to further discuss the remaining contentions raised by the appellants.

Judgment affirmed.

Shoemaker, J., and Agee, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied November 28, 1962.