**In re SCRAP DISPOSAL, INC., Debtor.**

**Bankruptcy No. 80–01270–M.**

United States Bankruptcy Court,
S.D. California.

Nov. 3, 1982.

Philip G. Giacinti, Jr., Procopio, Cory, Hargreaves & Savitch, San Diego, Cal., for trustee.

Victor A. Vilaplana, Gray, Cary, Ames & Frye, San Diego, Cal., for debtor.

Sandra J. Brower, Deputy County Counsel, San Diego, Cal., for the County of San Diego.

Everett G. Barry, Jr., Freshman, Mulvaney, Marantz, Comsky, Kahan & Deutsch, San Diego, Cal., for Official Creditors' Committee.

## MEMORANDUM OPINION REGARDING CLAIM NO. 238 FOR PERSONAL PROPERTY TAXES

JAMES W. MEYERS, Bankruptcy Judge.

### I

On May 16, 1980, the debtor, Scrap Disposal, Inc. ("debtor"), filed for protection under Chapter 11 of the United States Bankruptcy Code ("Code").

An order approving the trustee's liquidating plan of reorganization was entered on July 19, 1982.

The County of San Diego, State of California ("County"), filed a single claim, which totaled without penalties $40,317.40. This claim represents four separate personal property tax bills.

The trustee objected to the County's claim on August 2, 1982.

The objection came on for hearing before this Court on August 27, 1982.

### II

#### FACTS

Under the authority of the California Constitution, article XIII, section 1, and the California Revenue and Taxation Code, section 201, the debtor was taxed for the tax year 1978–1979 by the County. The debtor was taxed for this period at a rate mandated by article XIII A of the California Constitution, popularly known as Proposition 13. Under the limitations promulgated by article XIII A, the County taxed the debtor at the rate of one percent (1%) of full cash value of its property, that is, property on the secured roll as well as the unsecured

1. "The 'secured roll' is that part of the roll containing state assessed property and property the taxes on which are a lien on real property sufficient, in the opinion of the assessor, to secure payment of the taxes. The remainder of the roll is the 'unsecured roll.'" Cal.Rev. & Tax Code § 109 (1970). *See also* Cal.Rev. &

roll.[1] At the time this assessment was made, there was a question as to whether article XIII A limited not only the tax rate applicable to property on the secured roll, but also the rate applicable to property on the unsecured roll. It was held in *Board of Supervisors of San Diego County v. Lonergan*, 27 Cal.3d 855, 167 Cal.Rptr. 820, 616 P.2d 802 (1980), that the one percent restriction was inapplicable to property on the unsecured roll and such property was to be taxed at the pre-article XIII A rate. *Id.* at 869, 167 Cal.Rptr. 820, 616 P.2d 802.

Pursuant to this decision, on November 1, 1981, the County issued the debtor four supplementary unsecured property tax bills. These supplementary tax bills were issued because the debtor had been taxed at the one percent rate which was found to be an incorrect rate and these tax bills were intended to recover the difference between the one percent rate and the proper, pre-article XIII A rate for the year 1978–1979. The supplementary tax bills were last payable without penalty on December 31, 1981.

### III

#### DISCUSSION

No factual issues are in dispute. The only question is what priority, if any, the County's claim for these tax bills should enjoy.

The County argues that its claim is a priority six claim under 11 U.S.C. § 507(a)(6)(B), which grants such a priority to unsecured governmental claims that are for "a property tax assessed before the commencement of the case and last payable without penalty after one year before the date of filing of the petition." In the alternative, it is contended that the claim should be treated as an administrative expense as defined by 11 U.S.C. § 503(b)(1)(B)(i).

Tax Code § 134 (1982 Supp.). Generally, "property on the unsecured roll consists almost exclusively of personal property and does not constitute a lien on real property." *McDougall v. County of Marin*, 208 Cal.App.2d 65, 71, 25 Cal.Rptr. 107 (1962).

In rebuttal, the trustee for the debtor urges that the claim should be analogized to an erroneous tax refund or credit and, by the authority of 11 U.S.C. § 507(c), be treated as having arisen in the assessment year 1978–1979. As such, it would be a tax two years before the filing of the petition and not within the purview of 11 U.S.C. § 507(a)(6)(B). Addressing the County's alternative argument, the trustee would deny administrative expense priority to the claim in that it is a tax which was incurred two years prepetition and, as such, was not incurred by the estate. Therefore, it should not be treated as an administrative expense.

Both the County and the trustee for the debtor seem to agree that this tax which was last payable without penalty nineteen months after the filing of the petition would be, under normal circumstances, within the perimeters of 11 U.S.C. § 507(a)(6)(B). The only unique feature of this claim is that the tax bills were issued pursuant to the decision announced in *Board of Supervisors of San Diego County v. Lonergan, supra,* 27 Cal.3d 855, 167 Cal. Rptr. 820, 616 P.2d 802. The issue then narrows itself to whether or not the supplemental tax bills were issued as the result of an "error." If done as the result of an error, 11 U.S.C. § 507(c) will control; if not, then it must be determined if 11 U.S.C. § 507(a)(6)(B) applies.

■ Neither the Code nor the legislative history define the term "erroneous." The term must therefore be given its plain meaning of "mistaken," or "involving error." *In re Coleman,* 20 B.R. 267, 269 (Bkrtcy.Kan.1981). The incorrect assessment of a tax under an authority which later turns out to be inapplicable, clearly involves error and any supplemental tax bills issued to remedy such a mistake are issued as a result of an error. While no Code section directly addresses the present

situation, section 507(c) is deemed to control. The debtor should have been taxed the additional amount in 1978–1979, but was not, due to the incorrect interpretation of article XIII A. Because of the County's error their claim should not be elevated to a priority it would not have otherwise enjoyed. This Court holds that section 507(c) controls and the claim will be "treated the same as the claim for the tax to which such refund or credit relates." 11 U.S.C. § 507(c). Simply put, the claim relates back to the year which the debtor was erroneously taxed and is so treated. Since this claim is one deemed to have arisen in 1978–1979, and 11 U.S.C. § 507(a)(6)(B) is limited to claims last payable without penalty *after* one year before the filing of the petition, it cannot be a sixth priority claim.[2]

■ The County's next contention is that if its claim is not granted priority six status, then it must be an administrative claim. In order to qualify as an administrative claim under 11 U.S.C. § 503(b)(1)(B), the tax must have been incurred by the estate. An estate is not created until the commencement of the case. 11 U.S.C. § 541(a). This tax, as has already been determined, relates back to 1978–1979, which was prepetition. As such, it was not a tax incurred in the administration of the estate. It merely became payable after the filing of the petition and is not entitled to be promoted to a first priority administrative expense. This holding finds support in *Collier on Bankruptcy,* in which it is stated that:

> [I]t would seem likely that all that was meant was that to the extent a debtor's prepetition liability became a tax claim after the petition, it would not for that reason be given administrative expense status under section 503(b)(1)(B).

3 *Collier on Bankruptcy,* ¶ 503.04[1][b], at 503–22 and 23 (15th ed.).

---

**2.** The trustee's liquidating plan which was approved, classifies a priority six claim as a "Class 4" claim. Satisfying the claims in Classes 1, 2 and 3 will exhaust the funds in the possession of the trustee; claims in Class 4 will remain unpaid and are otherwise not provided

for under the plan. Therefore, even if the County's claim were treated as a priority six, it would remain unpaid. As a practical matter, the only manner by which the claim would share in distribution would be if it were found to be an administrative claim.

This view is further buttressed by *In re Westholt Mfg. Inc.,* 20 B.R. 368, 371 (Bkrtcy.Kan.1981), which held that in order to be granted administrative status, the tax must have been incurred by the estate after the filing of the petition. *Id.* at 371.

## IV

## CONCLUSION

Pursuant to the above discussion, the Court concludes that the County's claim is one for tax bills which were issued due to an erroneously low percentage rate being applied in the original tax bill. This claim is to be treated as having arisen in the original tax year, 1978–1979, by the authority of 11 U.S.C. § 507(c). This being the case, it is not within the scope of 11 U.S.C. § 507(a)(6)(B). Because it was incurred prepetition, and not by the estate, it is not entitled to be treated as an administrative expense.

This opinion shall constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 752. The trustee will submit an appropriate proposed order within ten days of the filing of this opinion.