**In re COLEMAN AMERICAN MOVING SERVICES, INC., A Kansas Corporation, Debtor.**

**Bankruptcy No. 80–40157.**

United States Bankruptcy Court, D. Kansas.

Oct. 23, 1981.

James S. Willis, McDowell, Rice & Smith, Kansas City, Kan., for Coleman.

G. Scott Nebergall, Trial Atty., Tax Div., Dept. of Justice, Washington, D. C., Jim J. Marquez, U. S. Atty., Mary K. Briscoe, Asst. U. S. Atty., Topeka, Kan., for I.R.S.

## MEMORANDUM OF DECISION

JAMES A. PUSATERI, Bankruptcy Judge.

In this chapter 11 proceeding the debtor-in-possession, Coleman American Moving Services, Inc. (Coleman) objects to the priority claim of the Internal Revenue Service (IRS) arguing the IRS cannot have a priority claim on interest arising from an erroneous refund if the tax to which the refund is related has lost its priority status. The IRS argues a claim for interest on the erroneous refund, though dependent on the original priority of the underlying tax, does not lose that status if assessed within the time allowed by the Bankruptcy Code.

The issues presented for determination are:

1. In order to entitle a tax claim to priority status under § 507(a)(6) must it both be due within three years of the petition date under § 507(a)(6)(A)(i) *and* assessed within 240 days of the petition date under § 507(a)(6)(A)(ii).

2. Is a premature refund an "erroneous refund" within the meaning of 11 U.S.C. § 507(c).

3. When a premature refund is made, is the interest arising from the tax assessment because of the premature refund entitled to a priority claim under § 507(c).

The parties have submitted legal memoranda and the matter is ready for determination.

## FINDINGS OF FACT

Coleman American Moving Services, Inc. (Coleman) reported an income tax liability of $510,093.46 for its 1972 tax year. Coleman filed tentative applications for carryback losses from its tax years 1973 and 1975 to its 1972 tax year which resulted in tax abatements of $100,729.00 on August 30, 1974, $50,128.00 on January 1, 1975 and $359,236.46 on January 1, 1976. Refunds of taxes plus interest were made to Coleman.

Upon examination, the Internal Revenue Service (IRS) determined the corporate income tax liability for 1972, except for a recapture of an investment credit of $212.33, was eliminated by the net operating loss carrybacks from the later years. It was determined a tax abatement of $100,729.00 should have been $10,688.15 and a $50,128.00 tax abatement was entirely incorrect.

Therefore, though ultimately the tax liability on the 1972 return was eliminated, the IRS made premature abatements and refunds to Coleman. On August 6, 1979, the IRS assessed a tax liability of $212.33 for the 1972 tax year and $15,963.47 interest on the premature refunds. Coleman made a payment and the amount left owing was $15,901.11. Coleman does not dispute these assessments, figures or dates. On March 5, 1980, or within 240 days of the IRS assessment, Coleman filed a chapter 11 petition in bankruptcy. The IRS filed a proof of claim against Coleman on September 5, 1980 for $15,901.11.

## CONCLUSIONS OF LAW

At issue is whether the IRS is entitled to a priority claim under § 507. Their claim is two-fold. The first portion arises from a tax deficiency assessed within 240 days before the bankruptcy petition was filed, the priority of which the debtor-in-possession does not appear to dispute. The second portion arises from interest due on a premature refund also assessed within 240 days of the petition date.

█ Section 507(a)(6)(A)(ii) gives a priority claim to:

*(6) Sixth, allowed unsecured claims of governmental units, to the extent that such claims are for —*

*(A) A tax on or measured by income or gross receipts —*

\*    \*    \*    \*    \*    \*

*(ii) Assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition;*

Coleman argues that a tax must be due within three years before the petition date, § 507(a)(6)(A)(i) *and* must be assessed within 240 days under § 507(a)(6)(A)(ii). The legislative history, however, indicates the tax must be due within three years *or* assessed within 240 days, and this assessment was made within 240 days of the petition date. Cong.Rec. p. H 11112 (Sept. 28, 1978) (Rep. Edwards); Brody, Practice Under the Bankruptcy Act 174 (1979).

Section 507(c) further provides:

*(c) For the purpose of subsection (a) of this section, a claim of a governmental unit arising from an erroneous refund or credit of a tax shall be treated the same as a claim for the tax to which such refund or credit relates.*

■  The refund in the instant case was not necessarily an improper amount, but rather was made prematurely. Neither the Code nor the legislative history define "erroneous," and the Court and the parties have been unable to find a case defining the word "erroneous" in § 507(c). The word "erroneous" therefore must be given its plain meaning of "mistaken," Ballentines Law Dictionary 414 (3rd Ed. 1969), or "involving error," Black's Law Dictionary 637 (4th Ed. 1968). It is clear a refund made prematurely is one "involving error" and therefore is an erroneous refund.

Next the Court notes matured interest is an allowable claim, § 502(b)(2), and therefore the interest in the instant case arising out of the erroneous refund is a claim under § 507(c).

■  The only issue remaining is whether interest arising from this refund is entitled to a priority claim. Coleman argues sections 507(a)(6)(A)(ii) and 507(c) require a finding that the refund or interest arising out of the refund is not entitled to priority unless the underlying tax from which the refund and interest arose is also entitled to priority. The instant underlying tax was assessed in 1973, and is not a priority claim because it was not assessed within 240 days of March 5, 1980, the date the bankruptcy petition was filed, as required by § 507(a)(6)(A)(ii), and in the alternative because the tax was due more than three years before the date of the filing of the petition under § 507(a)(6)(A)(i). Since the tax is not entitled to a priority claim, Coleman argues neither is the interest on the erroneous refund entitled to a priority claim. Thus Coleman is interpreting § 507(c) to state a claim on an erroneous refund receives the same priority treatment as the *claim for tax to which such refund or credit relates* only if such tax would also still be entitled to priority treatment. The language of § 507(c), however, does not include this qualification, and the legislative history does not indicate such an interpretation was intended. Section 507(c) simply provides if a governmental unit's claim arises from an erroneous tax refund, and an assessment on the error is made within 240 days of the petition date, the claim gets a sixth priority treatment. See Corbin, The Tax Collector and the New Bankruptcy Code, Aug./Sept. 1981 Commercial L.J. 277, 280 (1981).

If Coleman had underpaid its taxes and the deficiency was assessed within 240 days of the petition date, there can be no question the deficiency and interest on the deficiency would be entitled to a priority claim. § 507(a)(6)(A)(ii). The Court (and Congress) sees no difference between assessment of a tax deficiency in which it is determined the debtor owes the government money, and assessment of an erroneous refund in which it is determined the debtor received too much money, or prematurely received money and in either case owes the government money.

Therefore, because the assessment on the refund error and tax deficiency was made within 240 days of the petition date, the IRS's claim is entitled to a sixth priority.

The foregoing constitutes Findings of Fact and Conclusions of Law under Bankruptcy Rule 752 and Rule 52(a) of the Federal Rules of Civil Procedure.