In re Lindburgh JACKSON, Debtor.

United States of America, Plaintiff,

v.

Lindburgh Jackson, Defendant.

Bankruptcy No. 98–1608–WRS.

United States Bankruptcy Court,
M.D. Alabama.

Aug. 24, 1999.

Cynthia Lewis Stier, Trial Attorney, Tax Division, U.S. Department of Justice, Washington, D.C., for plaintiff.

Cecil M. Tipton, Jr., Attorney at Law, Opelika, AL, for defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

WILLIAM R. SAWYER, Bankruptcy Judge.

This adversary proceeding came before the Court upon the Government's Motion for Summary Judgment wherein it seeks a determination that an erroneous refund made to the Debtor was not discharged in his Chapter 7 bankruptcy case. As there are no material facts in dispute and because the Government is entitled to judgment as a matter of law, the Court GRANTS the Government's Motion for Summary Judgment and finds that the liability in question is excepted from discharge pursuant to 11 U.S.C. § 523(a)(1)(A); 507(a)(8)(A)(i) and 507(c). *See*, Rule 56, Fed.R.Civ.P., *see also*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 332, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Jones v. City of Columbus, Georgia*, 120 F.3d 248, 251 (11th Cir.1997).

### I. FACTS

The Government submitted the Declaration of Jackie Washington, an Internal Revenue Service employee in its Birmingham, Alabama office, in support of its motion and the Debtor does not dispute the factual allegations. On March 25, 1996, the Internal Revenue Service intended to apply a credit in the amount of $34,491.84 to an account of a taxpayer with a Social Security Number 263–96–3787. However, the refund was erroneously keyed to Social Security Number 263–46–3787, which is the Debtor's social security number. At that time, the Debtor owed $464.63 to the Internal Revenue Service for delinquent 1988 income taxes but had no other tax liabilities. The Internal Revenue Service offset the credit which had been erroneously made to the Debtor's account against the 1988 liability and, as no other amounts were then owed by the Debtor, issued a refund check to the Debtor in the amount of $34,084.89.

The Internal Revenue Service later discovered its error and when the Debtor failed to return the money erroneously refunded to him, brought suit in the United States District Court for the Middle District of Alabama, in a case styled *United States v. Lindbergh Jackson*, Civil No. 98–C–106–E. The Debtor filed his petition in bankruptcy on April 1, 1998 and was granted a discharge on December 8, 1998.

### CONCLUSIONS OF LAW

This is an adversary proceeding to determine whether the Debtor's liability to the United States for the amount erroneously refunded to him is excepted from discharge in this Chapter 7 bankruptcy proceeding. This Court has jurisdiction to hear this adversary proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding which may be heard and determined by this Court. 28 U.S.C. § 157(b)(2)(I).

In general, taxes for years for which the return was due within three years of the date of the petition in bankruptcy are entitled to priority over other debts and, if not paid in the bankruptcy proceedings, are excepted from the Debtor's discharge in bankruptcy. 11 U.S.C. § 523(a)(1)(A); 507(a)(8)(A)(i); *see also, Wood v. United States*, 866 F.2d 1367 (11th Cir.1989). This furthers Congress' policy that tax liabilities for recent years ought to be paid and encourages the Internal Revenue Service to promptly collect delinquent taxes. Stale taxes, on the other hand, those that are more than three years old, are not given priority over other claims in the Debtor's bankruptcy proceeding and, if

not paid in the bankruptcy proceeding, are subject to the general discharge in bankruptcy. *See generally,* 11 U.S.C. § 727. In other words, taxes which are less than three years old are never dischargeable and taxes which are more than three years old are subject to discharge unless the Government can find another exception to discharge which applies.

 A liability "arising from an erroneous refund or credit of a tax has the same priority as a claim for the tax to which such refund or credit relates." Section 507(c). As taxes which are entitled to priority under Section 507 are also excepted from discharge under Section 523(a)(1)(A), this rule applies to dischargeability proceedings as well as priority determinations. The rule of Section 507(c) works well when Internal Revenue Service has erroneously refunded, to a taxpayer, that taxpayer's own money as it is clear which tax year applies. Things are not so clear where, as here, the Internal Revenue Service has erroneously given a refund to taxpayer A which properly belongs to taxpayer B. In such a case, the refund does not readily relate to any of taxpayer A's taxable years.

The Debtor argues that the refund in question relates to 1988 because the erroneous credit was applied first to the Debtor's liability for that year and because the transmittal to the taxpayer indicated that it was for 1988. In addition, the "Schedule of Unpaid Tax Liability" for the Debtor's 1988 account indicates a refund for the year 1988 in the amount of $34,084.89. *See,* Government Exhibit A2. If the Debtor is correct, the liability is dischargeable because it is for a year for which the return was due more than three years prior to the date of the petition. 11 U.S.C. §§ 523(a)(1)(A), 507(a)(8)(A)(i).

The Debtor's argument is untenable because it was mere happenstance that the liability was owed for such an old period. There is no relationship between the erroneous refund and the 1988 liability, except that the erroneous credit, like any other credit, is first set off against any unpaid taxes before a refund is made to the taxpayer. To relate an erroneous refund such as the one in suit here to the Debtor's delinquent taxes is completely arbitrary. The erroneous credit in this case was applied first to the Debtor's outstanding liability, which in this case the Debtor owed only for the year 1988. As refunds normally relate to more current years and delinquencies to older years, the rule proposed by the Debtor here would undermine Congressional policy. Moreover, the rule proposed by the Debtor would provide no guidance in situations where the taxpayer had no outstanding liabilities at the time the erroneous refund was made.

The Government argues that in situations such as this, where the refund is not the taxpayer's money but rather another unrelated individual's money, the erroneous refund should be treated as relating to the year in which it was received by the Debtor, which in this case is 1996. The Government argues that this is consistent with the general "three-year rule" of Sections 523(a)(1)(A) and 507(a)(8)(A)(i), which gives the Government three years to collect its taxes before the taxpayer can file bankruptcy and discharge them. As the Debtor's 1996 tax return was due on April 15, 1997, which is within three years of the date of the petition in this case, the liability here would be excepted from discharge.

In further support of its position, Government cites the case of *In re Campbell,* 1990 WL 284750 (Bankr.D.Colo.1990) where it was stated that:

> The Court (and Congress) sees no difference between assessment of a tax deficiency in which it is determined the debtor owes the government money, and assessment of an ERRONEOUS REFUND in which it is determined the debtor received too much money, or prematurely received money and in either case owes the Government money. (citing *In re Coleman American Moving*

**476**

*Services, Inc.,* 20 B.R. 267 (Bankr.Kan. 1981)).

The principal espoused in *Colemen,* of treating an erroneous refund no differently than an assessment, leads to the result that an erroneous refund from an unrelated taxpayer should relate to, for purposes of Section 507(c), the tax year in which the refund was received. As the Government observes, this rule is consistent with the three-year rule and leaves the taxpayer at risk of Internal Revenue Service collection activity for three years. The Debtor's construction of Section 507(c), on the other hand, would result in a windfall to the Debtor and eviscerate the underlying and well-established policy that tax liabilities are not dischargeable for a period of at least three years.

■ The Debtor also makes an estoppel argument. As the Government made representations to the effect that the erroneous refund relates to the 1988 tax year, and because the Debtor contends that he relied upon the Government's representations (actually filing bankruptcy based upon the Government's representations), the Government should be estopped from denying that any taxable year other than 1988 is involved. The Debtor's estoppel argument necessarily fails as it is well established that estoppel cannot be used against the Government as against private litigants. *Office of Personnel Management v. Richmond,* 496 U.S. 414, 419, 110 S.Ct. 2465, 2468, 110 L.Ed.2d 387 (1990); *Heckler v. Community Health Services of Crawford County, Inc.,* 467 U.S. 51, 60, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984); *Federal Crop Insurance Corporation v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947). Therefore, the Debtor's claim that he relied to his detriment upon statements made by the Government, even if true, is to no avail.[1]

---

1. The Debtor's theory, that he was fraudulently induced to file bankruptcy, is highly problematic even if it were applied to a non-governmental creditor. While the Court need not

### III. CONCLUSION

For the reasons set forth above, the Court finds that the Debtor's liability to the United States for that erroneous refund made on March 25, 1999 in the amount of $34,084.89 is excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(1)(A); 507(a)(8)(A)(i) and 507(c).

reach the question here, the Debtor's estoppel theory probably would not work against any creditor.