**John F. FRONTONE and Kathleen M. Frontone, Debtors.**

**United States of America Internal Revenue Service, Appellant,**

v.

**John F. Frontone and Kathleen M. Frontone, Appellees.**

No. 03–3196.

United States District Court, C.D. Illinois, Springfield Division.

Nov. 7, 2003.

Elizabeth L. Collins, Office of U.S. Attorney, Springfield, IL, Karen Smith, U.S. Dept. of Justice, Tax Division, Washington, DC, for Appellant.

John S. Narmont, Springfield, IL, for Appellees.

## *ORDER*

SCOTT, District Judge.

The United States of America Internal Revenue Service (IRS) appeals from the Bankruptcy Court's Opinion (Opinion) and Orders entered on July 2, 2003 *(R. 12 & 13)*, and July 30, 2003 *(R. 17)*, in Appellees John F. Frontone and Kathleen Frontone's (Debtors) current Chapter 13 bankruptcy proceeding.[1] The Bankruptcy Court disallowed the IRS's claim arising from trans-

---

1. The Court refers to documents in the record on appeal by the record number R. set forth in the Record on Appeal—Index Transmittal (d/e 1) from the Clerk of the Bankruptcy Court.

actions related to the Debtors' year 2000 taxes. The Bankruptcy Court determined that this claim was discharged in the Debtors' prior Chapter 7 bankruptcy proceeding. For the reasons set forth below, the decision of the Bankruptcy Court is AFFIRMED in part and REVERSED in part.

### STATEMENT OF FACTS

The Debtors timely filed their joint federal income tax return for the year 2000. They correctly reported that they owed $10,114.00 in income and self-employment taxes. They further reported that they had paid $9,280.00 of these taxes through withholding payments. The return showed that they owed the IRS $834.00 in unpaid taxes. On May 28, 2001, the IRS made an error in reviewing the return. The IRS incorrectly determined that the Debtors owed $4,139.56 in taxes for the year 2000. The IRS assessed taxes in that amount and issued a refund to the Debtors in the sum of $5,140.44. The IRS sent the Debtors a Notice numbered CP12 (Notice) which stated that the IRS, "changed the figures on your 2000 tax return because we found one or more mistakes which changed the amount of your refund." *Objection to Claims (R. 15)* Exhibit A at 1. The Notice explained, "You figured your self-employment tax on Schedule SE incorrectly." *Id.* at 2. On July 30, 2001, the IRS discovered its error. The IRS made a supplemental assessment against the Debtors for taxes due in the year 2000 in the sum of $5,977.44.[2]

Beginning in September 2002, the Debtors filed a Chapter 7 bankruptcy followed by a Chapter 13 bankruptcy. The combined use of a Chapter 7 and a Chapter 13 bankruptcy is sometimes called a "Chapter 20" bankruptcy. *See In re Standfield,* 152

B.R. 528 (Bankr.N.D.Ill.1993). In the type used here, a debtor's initial Chapter 7 bankruptcy discharges most of his unsecured debt. 11 U.S.C. § 727(b). The debtor then files a Chapter 13 bankruptcy in which he submits a plan to reorganize the remaining debts and use his disposable income to pay a portion of those remaining debts over time. 11 U.S.C. §§ 1322 and 1325. The serial filing of the two bankruptcies often makes the Chapter 13 reorganization much more feasible (from the debtor's perspective) because the debtor only makes provision in the Chapter 13 plan for payments to the secured creditors and those unsecured creditors who hold debts that were not discharged by the Chapter 7 proceeding. *See Johnson v. Home State Bank,* 501 U.S. 78, 87, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). Creditors who held unsecured claims that were discharged in the initial Chapter 7 proceeding receive nothing under the Chapter 13 plan.

Certain tax debts are not discharged in a Chapter 7 bankruptcy and so must be provided for in the subsequent Chapter 13 plan of reorganization. Section 523(a)(1)(A) excepts from discharge a tax, "of the kind and for the periods specified in section 507(a)(2) or 507(a)(8) of this title." 11 U.S.C. § 523(a)(1)(A). Section 507 lists the claims that are given priority in the distribution of bankruptcy estate assets. Section 507(a)(8)(A)(i) gives eighth priority to taxes measured by income, "for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition." 11 U.S.C. § 507(a)(8)(A)(i). Section 507(a)(8)(A)(i) priority tax claims are thus excepted from a Chapter 7 discharge and

---

**2.** This is the amount listed in the IRS notice. There appears to be a math error, however. The amount should have been $5,974.44 ($5140.44 + $834).

must be provided for in a subsequent Chapter 13 plan. Further, the Chapter 13 plan must provide for payment in full of such priority tax claims. 11 U.S.C. § 1322(b).

The Debtors here followed the pattern of a Chapter 20 bankruptcy. They filed a Chapter 7 bankruptcy petition on September 30, 2002. They received a discharge on January 2, 2003. On December 30, 2002, the Debtors filed their Chapter 13 bankruptcy petition.[3] The Debtors listed the IRS in their Chapter 13 bankruptcy schedules as a priority creditor only for unpaid year 2001 taxes in the sum of $609.29. *Debtors' Petition (R. 2)* Schedule E Creditors Holding Unsecured Priority Claims.

On January 13, 2003, the IRS filed a proof of claim in the Debtors' Chapter 13 proceeding in which the IRS asserted a priority claim, pursuant to 11 U.S.C. § 507(a)(8)(A)(i), for $6,723.78 in assessed, unpaid taxes. *IRS Proof of Claim (R. 5)*. The IRS asserted a priority tax claim for unpaid year 2000 taxes in the sum of $5,470.44, plus $598.03 in interest; and unpaid year 2001 taxes in the sum of $628.00, plus $27.31 in interest.[4] The IRS Proof of Claim also listed a general, unsecured claim for $343.17. The Proof of Claim stated that the 2000 taxes were assessed on May 28, 2001. On April 28, 2003, the IRS filed an Amended Proof of Claim. The Amended Proof of Claim stated that the year 2000 taxes were assessed through a supplemental assessment on July 30, 2001, rather than the original assessment on May, 28, 2001. The IRS's claim otherwise remained unchanged.

The Debtors objected to the IRS's claim for year 2000 taxes and interest (2000 Claim). The Debtors argued that the 2000 Claim was really a general unsecured claim for the return of the erroneous refund issued on May 28, 2001, rather than a priority claim for taxes. As such, the 2000 Claim was discharged on January 2, 2003, when the Debtors received their discharge in the Chapter 7 proceeding. 11 U.S.C. § 727(b). The Debtors thus no longer owed the 2000 Claim to the IRS and should not be required to pay any of it in their current Chapter 13 bankruptcy proceeding. The IRS argued that the 2000 Claim was a § 507(a)(8)(A)(i) priority tax claim that survived the Chapter 7 discharge. The IRS asserted that its claim was based on the supplemental assessment made on July 30, 2001, rather than a right to recover the erroneous May 28, 2001, refund.

### THE OPINION BELOW

The Bankruptcy Court agreed with the Debtors. *Opinion entered July 2, 2003 (Opinion)(R. 12)*. The Bankruptcy Court explained the relationship between the § 523(a)(1)(A) exception to discharge and the § 507(a)(8)(A)(i) priority for taxes. The Bankruptcy Court acknowledged that the Debtors' income and self-employment taxes due for the year 2000 would be entitled to priority under § 507(a)(8)(A)(i) because they were measured by income and the return was due on those taxes within three years of the filing of Debtors' Chapter 7 petition. Those priority tax claims

---

**3.** The IRS does not challenge the ability of the Debtors to file their Chapter 13 proceeding before the discharge was entered in the Chapter 7 proceeding. *See Freshman v. Atkins,* 269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193 (1925); *In re Grimes,* 117 B.R. 531, 532 (9th Cir. BAP 1990).

**4.** The amount listed by IRS as unpaid taxes for year 2000, being $5,470.44, is inexplicably different from the $5,974.44 noted previously.

would thus be excepted from discharge under § 523(a)(1)(A). *Opinion* at 3–4.

The Bankruptcy Court, however, viewed the 2000 Claim as a claim for the return of an erroneous refund, not for additional taxes. The Bankruptcy Court looked to the Bankruptcy Code to determine whether tax refund claims should be treated as tax claims for purposes of the priority provision, § 507(a)(8)(A)(i), and the exception from discharge provision, § 523(a)(1)(A). Section 507(c) of the Bankruptcy Code states that, "a claim of a governmental unit arising from an erroneous refund ... has the same priority as a claim for the tax to which such refund credit relates." *Opinion* at 4. In 1984, Congress amended § 507(c) by substituting the phrase, "has the same priority" in place of the phrase, "treated the same." *Bankruptcy Amendments and Federal Judgeship Act of 1984,* Pub.L. 98–353, 98 Stat. 333, Tit. III, § 449(b). The Bankruptcy Court stated that after the amendment, erroneous refunds had the same priority as the taxes from which the refunds arose, but were not otherwise treated as tax claims under the Bankruptcy Code. *Opinion* at 5–6, *citing In re Jackson,* 253 B.R. 570, 573 (M.D.Ala.2000). Since the 2000 Claim arose from an erroneous refund, the 2000 Claim had the same priority as the taxes from which it arose, but was not otherwise treated as a tax claim, and so was not excepted from discharge under § 523(a)(1)(A). The 2000 Claim thus was discharged in the Debtors' prior Chapter 7 proceeding.

The Bankruptcy Court rejected the IRS's argument that the 2000 Claim should be viewed as a tax claim created by the July 30, 2001, supplemental assessment. The Bankruptcy Court stated that the supplemental assessment was only an alternate means of collecting the erroneous May 28, 2001, refund. The assessment did not change the fact that the claim arose from the erroneous refund:

> Section 507(c) refers to 'a claim of a governmental unit arising from an erroneous refund or credit'. It is undisputed that IRS erroneously refunded to the Debtors income taxes for the year 2000 which it now claims are owed. How IRS chooses to recover those funds is irrelevant. When IRS makes an erroneous refund, it may remedy its error either through an erroneous refund proceeding or through a supplemental assessment ... However, IRS's choice of remedy is not pertinent to how the Bankruptcy Code treats the dischargeability of the obligation. The inescapable facts are that the Debtors timely filed their 2000 income tax return and timely paid their corresponding income tax obligation. IRS returned the money to them, then asked for it back. Why? Because it had made *an erroneous refund.* The fact that IRS calls it something else because it utilized another means of establishing the liability does not re-characterize it, for purposes of § 507(c), as something other than erroneous refund.

*Id.* at 5–6 (citation omitted)(emphasis in the original). The Bankruptcy Court further stated that exceptions to discharge should be read narrowly against the creditor in order to further the bankruptcy policy of giving the Debtors a fresh start. *Id.* at 7. The Bankruptcy Court concluded that the 2000 Claim was a claim for repayment of an erroneous refund, rather than a tax claim, and was discharged in the prior Chapter 7 proceeding. Since the 2000 Claim was discharged in the prior proceeding, the Bankruptcy Court sustained the Debtors' objection to the claim in the current Chapter 13 proceeding. *Id.* The Court allowed the IRS an unsecured priority claim of $655.31 for the unpaid 2001 taxes plus interest, and a general unsecured claim in the sum of $343.17, but

disallowed the 2000 Claim in its entirety. *Order entered July 2, 2003 (R. 13).*

The IRS moved for a new trial or to amend the judgment pursuant to Bankruptcy Rule 9023. *Motion for New Trial, or in the Alternative, to Amend and Make Additional Findings of Fact (R. 14).* The IRS filed this motion because the Bankruptcy Court had analyzed the original IRS Proof of Claim instead of the amended Proof of Claim, which expressly stated that the 2000 Claim was based on a supplemental assessment. The Bankruptcy Court denied this motion. *Order entered July 30, 2003 (R. 17).* The Bankruptcy Court found that its analysis with respect to the original Proof of Claim applied to the Amended Proof of Claim. The IRS now appeals.

### ANALYSIS

■ The IRS appeal asks the Court to determine whether the 2000 Claim is a claim for repayment of an erroneous refund or a claim for taxes based on a supplemental assessment. This is a question of law; the facts are undisputed.[5] As such, this Court reviews the Bankruptcy Court's decision *de novo. Matter of Love,* 957 F.2d 1350 (7th Cir.1992).

■ Bankruptcy principles control whether the 2000 Claim is a claim for a tax or for the return of an erroneous refund. The Internal Revenue Code's characterization of the claim as a supplemental assessment of tax is not controlling. *United States v. Reorganized CF & I Fabricators*

of Utah, Inc., 518 U.S. 213, 224, 116 S.Ct. 2106, 135 L.Ed.2d 506 (1996). Rather, this Court must make a functional examination of the facts and circumstances surrounding the 2000 Claim and the source of the obligation to determine whether the claim is a tax or an ordinary debt. *Id.; United States v. State of New York,* 315 U.S. 510, 515, 62 S.Ct. 712, 86 L.Ed. 998 (1942); *City of New York v. Feiring,* 313 U.S. 283, 285, 61 S.Ct. 1028, 85 L.Ed. 1333 (1941); *State of New Jersey v. Anderson,* 203 U.S. 483, 491–92, 27 S.Ct. 137, 51 L.Ed. 284 (1906). *See United States v. Sotelo,* 436 U.S. 268, 275, 98 S.Ct. 1795, 56 L.Ed.2d 275 (1978)(Internal Revenue Code characterization of a payment as a penalty was not dispositive).[6]

■ A tax is, "a pecuniary burden laid upon individuals or property for the purpose of supporting the government.... The amount is fixed by statute ... and capable of being enforced by action against the will of the taxpayer...." *State of New Jersey v. Anderson,* 203 U.S. at 492, 27 S.Ct. 137. An ordinary debt, however, is an obligation that arises when the action of one party in a transaction or series of transactions entitles the other party to compensation, rescission, or restitution (or some other type of payment) from the first party because of those actions. *See State of New Jersey v. Anderson,* 203 U.S. at 492, 27 S.Ct. 137 ("Debts are obligations for the payment of money founded upon contract, express or implied.") *(quoting*

---

5. The Debtors also argue that the IRS did not follow proper procedures in attempting to assess the additional tax. The Bankruptcy Court did not reach this issue. This Court also does not reach this issue.

6. The Supreme Court organizes governmental claims into three categories: taxes, penalties, and debt. *U.S. v. Reorganized CF & I Fabricators of Utah,* 518 U.S. at 224, 116 S.Ct. 2106.

The Supreme Court's use of the term "debt" in these cases is not consistent with the Bankruptcy Code's definition of that term. 11 U.S.C. §§ 101(5) and (12). Under the Bankruptcy Code's definitions, all of these claims would be "debts." This Court uses the term "ordinary debt" to mean the category of governmental claims that are neither taxes nor penalties.

*Meriwether v. Garrett,* 102 U.S. 472, 513, 26 L.Ed. 197 (1880)(Field, J. concurring)).

The Court must also analyze the nature of the 2000 Claim in light of the Congressional policy to give debtors a fresh start. Chapter 7 bankruptcy exists to grant the honest, insolvent debtor another chance financially. *Village of San Jose v. McWilliams,* 284 F.3d 785, 790 (7th Cir.2002). Thus, § 523 exceptions to discharge must be narrowly construed against a creditor in order to grant an honest debtor a fresh start. *Matter of Scarlata,* 979 F.2d 521, 524 (7th Cir.1992). This Congressional policy clearly applies in this circumstance. The Debtors filed their 2000 tax return on time and correctly reported their tax liability; the IRS made the mistake. Nothing in the record indicates that the Debtors evaded their tax obligations or engaged in any fraudulent conduct.[7]

In light of these governing principles, the facts and circumstances surrounding the 2000 Claim demonstrate that most of the claim is an ordinary debt for the return of an erroneous refund, not a tax. Initially, the Debtors reported that they owed $10,114.00 in taxes on their 2000 tax return. They paid $9,280.00 of those taxes through withholding payments. This obligation was a pecuniary burden laid on the Debtors by statute without their consent for the purpose of supporting their government; it was a tax for bankruptcy purposes. A portion of that tax, $834.00, was unpaid at the time the Debtors filed their return and is still unpaid. That $834.00 is still a priority tax claim excepted from discharge under § 523(a)(1)(A). The Bankruptcy Court erred in ruling that this portion of the 2000 Claim was discharged

in the prior Chapter 7 proceeding. The Debtors concede this point.

After fulfilling their obligation to pay most of the tax, the Debtors incurred another obligation to the IRS on or about May 28, 2001. This second obligation arose because: (1) the IRS erroneously assessed the wrong amount of tax and issued a refund that was not due; and (2) the Debtors kept the erroneous refund and so accepted the benefits of that mistake to which they were not entitled. Once the Debtors negotiated the erroneous refund check and kept the $5,140.44, the IRS had an immediate right to recover those funds. *United States v. Wurts,* 303 U.S. 414, 415, 58 S.Ct. 637, 82 L.Ed. 932 (1938); *Old Republic Ins. Co. v. Federal Crop Ins. Corp.,* 947 F.2d 269, 275 (7th Cir.1991); *United States v. Russell Mfg. Co.,* 349 F.2d 13, 16 (2nd Cir.1965). *Cf. O'Bryant v. United States,* 49 F.3d 340, 342 n. 3 (7th Cir.1995). The Debtors' obligation to restore the refund to the IRS arose from the actions of two parties in this individual transaction, not from a statutory levy. The obligation thus was an ordinary debt and not a tax. This ordinary debt was not entitled to priority under § 507(a)(8) and not excepted from discharge under § 523(a)(1)(A).

The IRS argues that it issued a supplemental assessment and so transformed the ordinary debt into a tax. The Internal Revenue Code certainly authorizes the IRS to issue such supplemental assessments of additional tax. 26 U.S.C. § 6203(a). Outside of bankruptcy, these provisions of the Internal Revenue Code are controlling. *O'Bryant v. United States,* 49 F.3d at 345 n. 8, *citing Brookhurst, Inc. v. United States,* 931 F.2d 554 (9th Cir.1991). Inside bankruptcy, howev-

---

7. This Court's analysis is limited to situations that do not involve fraudulent conduct or tax evasion. If the Debtors had engaged in fraud

or tax evasion, the claim would have been excepted from discharge. 11 U.S.C. §§ 523(a)(1)(C), 523(a)(4) and 523(a)(6).

er, Internal Revenue Code characterizations of claims are not controlling. *United States v. Reorganized CF & I Fabricators of Utah, Inc.*, 518 U.S. at 224, 116 S.Ct. 2106; *City of New York v. Feiring*, 313 U.S. at 285, 61 S.Ct. 1028. Rather, this Court must make a functional examination of the nature of the obligation at issue. *United States v. Reorganized CF & I Fabricators of Utah, Inc.*, 518 U.S. at 224, 116 S.Ct. 2106. In this case, the obligation arose from the actions of the parties in a specific transaction: on May 28, 2001, the IRS erroneously issued a refund check for $5,140.44, and the Debtors negotiated that check and kept funds to which they were not entitled. For purposes of the Bankruptcy Code, a claim arising from such actions is not a tax, but an ordinary debt, no matter how the Internal Revenue Code labels the obligation, or how the IRS elects to collect it.

■ Thus, the Bankruptcy Court properly focused its analysis on whether the Bankruptcy Code excepts erroneous refund claims from discharge. The Bankruptcy Court properly concluded that an erroneous refund claim is not considered a tax claim under § 523(a)(1)(A). Section 507(c) of the Bankruptcy Code formerly stated that an erroneous refund claim was "treated the same" as the tax to which the refund relates, but now states that such a claim "has the same priority" as such tax claim. *See Opinion* at 4–5. Thus, refund claims now have the same priority as the tax from which they arose, but are not otherwise treated the same as the underlying tax claims for purposes of the Bankruptcy Code. *Id.; In re Jackson*, 253 B.R. at 575–76. The 2000 Claim was not treated as a claim for taxes under § 523(a)(1)(A) and so was discharged in the Debtors' prior Chapter 7 proceeding.

The IRS argues that Congress only intended the 1984 amendment to § 507(c) to clarify the method for determining the priority of refund claims, not to change the substantive law. Prior to the amendment, conflicts arose in the courts concerning whether a refund claim could have priority even if the taxes from which the claim arose were too old to be entitled to priority. *See e.g., In re Coleman American Moving Services, Inc.*, 20 B.R. 267, 269 (Bankr.D.Kan.1981)(refund excepted from discharge). *But see e.g., In re Scrap Disposal, Inc.*, 24 B.R. 178 (Bankr.S.D.Cal. 1982) (refund not excepted from discharge). The IRS argues that Congress merely sought to clarify the ambiguity that caused this conflict. The IRS cites Senate Reports accompanying earlier versions of the bill that ultimately became the 1984 amendments to support this claim. Those Senate Reports stated that the proposed modification of § 507(c) was, "a stylistic and clarifying change." S.Rep. No. 97–150, 97th Cong. 1st Sess. at 31 (1981); S.Rep. No. 98–65, 98th Cong., 1st Sess. at 79 (1983). The only Congressional report accompanying the final bill that passed did not discuss the amendment to § 507(c). H. Conf. Rept. No. 98–882, 98th Cong., 2d Sess. (1984), U.S.Code Cong. & Admin.News 1984, p. 576.

However, the IRS's argument ignores the clear change in the language. Section 507(c) previously said that refund claims were to be treated the same as tax claims; now, the Section no longer says that. Now, § 507(c) says that refund claims have the same priority. This is a substantive change; refund claims are no longer treated the same as tax claims. In light of the policy of construing § 523 exceptions to discharge narrowly against the creditor, this Court must conclude that refund claims are not the same as tax claims for purposes of the § 523(a)(1)(A) exception to discharge. One ambiguous sentence of legislative history (which was not even in-

cluded in the Congressional report that accompanied the bill that actually passed) does not dissuade the Court from giving meaning to the clear change in the language of § 507(c).

Furthermore, even this scant legislative history supports the Bankruptcy Court's conclusion, not the IRS. The new, more precise language chosen by Congress states that refund claims should have "the same priority" as the taxes from which they arose. Congress removed the less precise phrase that such claims should be "treated the same as" tax claims. The more precise, clarifying language indicates that Congress enacted § 507(c) to give refund claims the same priority as the tax claims to which they relate; Congress did not intend to transform refund claims into tax claims for purposes of the Bankruptcy Code. Thus, legislative history supports the Bankruptcy Court's conclusion that refund claims should not be viewed as tax claims excepted from discharge under § 523(a)(1)(A).

The IRS also argues that the Ninth Circuit Court of Appeals opinion in *Bleak v. United States,* 817 F.2d 1368, 1370 (9th Cir.1987), supports its position that erroneous refund claims should be excepted from discharge. The *Bleak* case concerned an erroneous tax refund claim in a bankruptcy filed in April 1984, 90 days before the 1984 amendment to § 507(c). *Id.* at 1370. The *Bleak* Court concluded that all claims having the same priority as tax claims should be exempted from discharge. *Id.* The *Bleak* Court, however, expressly refused to consider the impact of the 1984 amendments because the bankruptcy at issue was filed before the amendment took effect. *Id.* After the amendment, however, refund claims have the same priority as the tax claims to which they relate, but they are not the same as tax claims. The Bankruptcy Court, thus, properly conclud-

ed that the IRS's claim to the extent it was based on the May 28, 2001, erroneous refund check for $5,140.44, was not a tax claim for purposes of § 523(a)(1)(A), and was discharged in the Debtors' prior Chapter 7 proceeding.

THEREFORE, the decision of the Bankruptcy Court is AFFIRMED in part and REVERSED in part. The IRS has the following allowed claims in the Debtors' current Chapter 13 proceeding: (1) a priority unsecured claim under Bankruptcy Code § 523(a)(1)(A) for $ 834.00 in unpaid taxes for the year 2000, plus accrued interest; and $655.31 in unpaid taxes and interest for the year 2001; and (2) a general unsecured claim for $343.17.

IT IS THEREFORE SO ORDERED.